UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SHUMENER, ODSON & OH LLP,

                Plaintiff,

-against-

SAADIA SQUARE, LLC,

                Defendant.

Case No. 1:25-mc-00596 (JLR)

**OPINION AND ORDER**

JENNIFER L. ROCHON, United States District Judge:

Plaintiff Shumener, Odson & Oh LLP ("Shumener" or "Plaintiff") has obtained a money judgment against Defendant Saadia Square, LLC ("Saadia Square" or "Defendant") in the amount of $785,346.97 (the "Judgment"). Dkt. 1-2 at 1. Having registered the Judgment in this District, *see* Dkt. 1, Shumener now moves for the issuance of an order pursuant to Federal Rule of Civil Procedure ("Rule") 69(a) and New York Civil Practice Law and Rules ("CPLR") Sections 5225(a) and 5240, requiring Saadia Square to turn over its membership interest in SM Logistics Holdco LLC ("SM Holdco") directly to Shumener toward satisfaction of the Judgment. *See generally* Dkt. 2-1 ("Br."); Dkt. 2-2 ("Morales Decl."); Dkt. 9 ("Reply"). Saadia Square opposes that motion. *See* Dkt. 8 ("Opp."); Dkt. 8-1 ("Saadia Decl."). For the following reasons, the motion is GRANTED.

## LEGAL STANDARD

"A motion to enforce a money judgment is governed by Rule 69(a), which provides that 'proceedings supplementary to and in aid of judgment or execution . . . must accord with the procedure of the state where the court is located.'" *CSX Transp., Inc. v. Island Rail Terminal, Inc.*, 879 F.3d 462, 468 (2d Cir. 2018) (omission in original) (quoting Fed. R. Civ. P. 69(a));

*accord Off-White, LLC v. AEUNZN*, No. 21-cv-09613 (JLR), 2024 WL 4652845, at *2

(S.D.N.Y. Nov. 1, 2024).  In New York, the relevant procedure is CPLR Section 5225(a):

> Upon motion of the judgment creditor, upon notice to the judgment debtor, where it is shown that the judgment debtor is in possession or custody of money or other personal property in which he has an interest, the court shall order that the judgment debtor pay the money, or so much of it as is sufficient to satisfy the judgment, to the judgment creditor and, if the amount to be so paid is insufficient to satisfy the judgment, to deliver any other personal property, or so much of it as is of sufficient value to satisfy the judgment, to a designated sheriff.

CPLR 5225(a).  By Section 5225(a)'s plain language, "the judgment creditor need only establish

that the judgment debtor owns and possesses the property at issue," and the Court must issue the

turnover order "[o]nce this showing is made."  *245 Park Member LLC v. HNA Grp. (Int'l) Co.*,

674 F. Supp. 3d 28, 39 (S.D.N.Y. 2023), *aff'd*, No. 23-842-cv, 2024 WL 1506798 (2d Cir. Apr.

8, 2024) (summary order).  Property subject to such turnover "includes ownership and

membership interests in a limited liability company."  *Arrowhead Cap. Fin., Ltd. v. Seven Arts

Ent., Inc.*, No. 14-cv-06512 (KPF), 2025 WL 551357, at *3 (S.D.N.Y. Feb. 18, 2025) (collecting

cases).  CPLR Section 5225(a) also requires that the Court have personal jurisdiction over the

judgment debtor.  *See Koehler v. Bank of Bermuda Ltd.*, 911 N.E.2d 825, 830 (N.Y. 2009)

("CPLR 5225(a) . . . contemplate[s] an order, directed at a defendant who is amenable to the

personal jurisdiction of the court, requiring him to pay money or deliver property.").

Generally, in granting turnover of property under CPLR Section 5225(a), the Court

orders a sheriff's sale.  *See, e.g.*, *Freeman v. Giuliani*, No. 24-mc-00353 (LJL), 2024 WL

4546883, at *3 (S.D.N.Y. Oct. 22, 2024) ("As a general matter, when issuing a turnover order,

' . . . if property is involved, the direction will be to deliver it to the sheriff, who will then sell it

at public auction.'" (quoting Siegel, N.Y. Prac. § 510 (6th ed.)));  *see also Telecom Bus. Sol.,

LLC v. Terra Towers Corp.*, No. 22-cv-01761 (LAK), 2026 WL 161298, at *3 (S.D.N.Y. Jan. 21,

2026) ("Ordinarily, the judgment debtor is to deliver the property to a sheriff for sale at a public

auction."), *appeal filed*, No. 26-374 (2d Cir. Feb. 19, 2026).  However, CPLR Section 5240 "grants the [trial court] broad discretionary power to alter the use of procedures set forth in CPLR article 52," *Sirotkin v. Jordan, LLC*, 35 N.Y.S.3d 443, 445 (N.Y. App. Div. 2016), and that discretion includes the authority to order turnover directly to the judgment creditor, *see 79 Madison LLC v. Ebrahimzadeh*, 166 N.Y.S.3d 126, 129 (N.Y. App. Div. 2022) (holding that trial court "providently exercised its discretion in ordering a direct turnover, given that the value of defendant's membership interest is uncertain and that defendant has obstructed plaintiff's efforts to pursue the judgment"); *see also* CPLR § 5240 ("The court may at any time, on its own initiative or the motion of any interested person, and upon such notice as it may require, make an order denying, limiting, conditioning, regulating, extending or modifying the use of any enforcement procedure.").

## DISCUSSION

### I.    The Propriety of Turnover

Turnover is proper here because Shumener has established that Saadia Square is its judgment debtor, *see generally* Dkt. 1-2, and submitted evidence that Saadia Square possesses an ownership interest in SM Holdco, *compare* Dkt. 2-9 ¶ 8 (Saadia Square alleging, in complaint it filed against another party in California, that it "is a minority member pursuant to a written operating agreement" of SM Holdco), *with 79 Madison*, 166 N.Y.S.3d at 128 (finding that plaintiff had met its burden of proving defendant's ownership of membership interest in LLC by submitting, among other proof, "defendant's complaint in another action, which attached [a] letter as an exhibit" stating that defendant was the "sole owner" of the LLC).  *See also* Dkt. 2-20 at 86 (organizational chart attached to SM Holdco operating agreement indicating that Saadia Square is the 100% owner of SM Holdco); Dkt. 2-17 at 40:22-41:2, 53:22-25 (transcript of vice president of Saadia Square testifying that Saadia Square "has a membership interest in" SM

Holdco).  Indeed, Saadia Square concedes its interest in SM Holdco.  *See, e.g.*, Opp. at 1 (stating that "Saadia [Square] is the minority member of" SM Holdco).[1]

Shumener does not point to evidence or other information supporting its assertion that the Court has personal jurisdiction over Saadia Square, *see* Br. at 14, but Saadia Square does not contest, or even mention, personal jurisdiction.  The Court views that silence as waiver.  *See Sutton v. Tapscott*, 120 F.4th 1115, 1125 (2d Cir. 2024) ("[A] district court should not raise personal jurisdiction *sua sponte* when a defendant has appeared and consented, voluntarily or not, to the jurisdiction of the court." (quoting *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010))).

Accordingly, Shumener has established its entitlement to a turnover order under Section 5225(a).  *See Mishcon de Reya N.Y. LLP v. Grail Semiconductor, Inc.*, No. 11-cv-04971 (JMF), 2012 WL 5512240, at *1 (S.D.N.Y. Nov. 13, 2012) ("New York authorities have held that the statute is 'unequivocal' that turnover is mandatory" "where it is shown that the judgment debtor is in possession or custody of money or other personal property in which he has an interest" (first quoting *Cardew v. Gialanella*, 937 N.Y.S.2d 709, 709-10 (N.Y. App. Div. 2012); and then quoting CPLR § 5225(a))); *see also 245 Park Member*, 674 F. Supp. 3d at 39 ("Once this showing is made, 'the court *shall* order that the judgment debtor pay the money[,]'" and "[u]nder New York law, a judgment creditor's turnover petition 'can be granted with respect to the interest that the judgment debtor concedes he owns in an LLC.'" (first quoting CPLR § 5225(a); and then quoting *79 Madison*, 166 N.Y.S.3d at 128)).

---

[1] Throughout its Opposition, Saadia Square refers to SM Holdco as a joint venture, or "JV."  *See generally* Opp; *see also* Saadia Decl. ¶ 2 ("Saadia [Square] is the passive member of a certain joint venture (the 'JV') that is governed by a written operating agreement (the 'Operating Agreement').").  Saadia Square does not contend, however, that an interest in a joint venture is meaningfully different from an interest in an LLC for purposes of Section 5225(a).

Saadia Square argues that turnover is inequitable here because the value of its interest in SM Holdco "dwarfs that of the Judgment." Opp. at 7; *see id.* at 6-8. Saadia Square does not provide a valuation of that interest, but it explains that it is a judgment creditor itself, after prevailing in an action in California against the managing member of SM Holdco and being awarded nearly $40,500,000. *Id.* at 1, 6; *accord* Saadia Decl. ¶ 5. It concludes that a turnover order would permit Shumener to "reap a windfall." Opp. at 2. Saadia Square also notes that Shumener has "perfected a lien and holds a charging order" entitling Shumener to any distribution that SM Holdco makes to Saadia Square, Saadia Decl. ¶ 11; *see* Opp. at 8, and that Saadia Square receives such distributions only at the discretion of SM Holdco's managing member, *see* Opp. at 4 n.5. Put simply, Saadia Square contends that if Shumener would just wait, then Saadia Square will be able to pay Shumener to satisfy the Judgment in full with a portion of the jury award, once affirmed. *See* Opp. at 7 (arguing that, if the $40,500,000 jury award is "upheld on appeal, Saadia [Square] can, and will, immediately satisfy the Judgment"). Finally, Saadia Square argues that a court-ordered turnover would violate SM Holdco's operating agreement, which prohibits Saadia Square from transferring its interest without the managing member's consent, and would constitute a default of a loan agreement between SM Holdco and another entity, *id.* at 4-6, thus "exposing Saadia [Square] to damages for tens of millions of dollars" without "mov[ing] [Shumener] any closer to collecting the Judgment," *id.* at 7-8. *See also* Dkt. 2-20 at 32, § 7.1(a) ("No transferee which has obtained a direct or indirect Company Interest without the prior written approval of the Members . . . shall have any right to become a Member and shall not be an assignee.").

These arguments are unavailing. Section 5225(a)'s mandatory language, *see Mishcon*, 2012 WL 5512240, at *1, does not permit the Court to require that a judgment creditor wait to collect until the judgment debtor is ready to pay. Nor does Shumener's existing lien prevent

5

Shumener from also seeking turnover. *See 79 Madison*, 166 N.Y.S.3d at 128-29 ("To the extent Limited Liability Company Law § 607(a) permits a judgment creditor to obtain a charging lien against a member's interest, it does not say that this is the creditor's exclusive remedy, nor does it purport to abolish or limit CPLR 5225(a)."). The Court is also not bound by the provisions of SM Holdco's operating agreement in ordering that turnover. *See TBG Funding LLC v. Kenwood Commons, LLC*, --- N.Y.S.3d ---, 2026 WL 504166, at *4 (N.Y. Sup. Ct. Feb. 12, 2026) (ordering turnover of LLC membership interest despite operating agreement's "'pick your partner' provisions" prohibiting transfer without other members' permission, because existing New York case law and CPLR article 52 do not "require proof that non-debtor members of [the LLC] affirmatively consent to turnover"); *cf. Jones v. Palermo*, 432 N.Y.S.2d 288, 290 (N.Y. Sup. Ct. 1980) (holding that partnership agreement's inclusion of "the usual prohibition against assignment by a partner of his interest in the partnership without the written consent of all other partners . . . may not insulate the judgment debtors from enforcement of a valid judgment against them," and ordering turnover of partnership interest under Section 5225(a)). And to the extent Saadia Square believes that the value of its membership interest in SM Holdco "dwarfs that of the Judgment," Opp. at 7, such that turnover would provide a windfall to Shumener, nothing prevented Saadia Square from selling that interest itself — in accordance with the terms of SM Holdco's operating agreement — and using part of its profit to satisfy the Judgment. *See 79 Madison*, 166 N.Y.S. at 129 (rejecting defendant's argument that turnover would result in windfall to plaintiff, because defendant "can avoid this result by satisfying the judgment"). Saadia Square cites to no authority that contradicts the foregoing principles.

Lastly, while Saadia Square points to a "loan by and between [SM Holdco] and an affiliate of Blackstone" that would purportedly also be affected by a turnover order, Opp. at 6, SM Holdco is not in fact a party to that agreement. *See* Dkt. 8-6 at 1 (loan agreement stating that

it is "between PARLEX 14 FINCO, LLC, . . . and SM LOGISTICS RIALTO LLC . . . and SM LOGISTICS MOUNT OLIVE LLC . . . (each, an 'Individual Borrower' or individually or collectively, as the context may require, jointly and severally, 'Borrower')" (capitalization in original)). Saadia Square warns, without explanation, that a turnover order here would violate Section 5.2.10 of that agreement, Opp. at 6, but the Court does not share its concerns. Saadia Square appears to refer to Section 5.2.10(b) of the loan agreement, which prohibits the "Borrower" (that is, SM Logistics Rialto LLC and SM Logistics Mount Olive LLC) from "permit[ting] any Restricted Party to," itself, "permit a Sale or Pledge of any interest in any Restricted Party." Dkt. 8-6 at 100. SM Holdco appears to be a Restricted Party within the meaning of this agreement. *See id.* at 31 (defining "Restricted Party" as including "any shareholder, partner, member, non-member manager, direct or indirect legal or beneficial owner, agent or employee of Borrower"); *id.* at Sch. III-2 (organizational chart reflecting that Saadia Square has an interest in SM Holdco, which is the 100% owner of SM Logistics Property Owner LLC, which in turn is the 100% owner of both SM Logistics Rialto LLC and SM Logistics Mount Olive LLC). Even so, Saadia Square does not explain how an order from this Court directing Saadia Square to turn over its interest in SM Holdco would constitute SM Holdco's *permitting* a sale or pledge of that interest, let alone the Borrowers' allowing SM Holdco to so permit. Accordingly, the Court is not persuaded that Saadia Square would be "forc[ed] . . . to incur debts that it will be unable to satisfy" as a result of a turnover order here. Opp. at 6.

For all the foregoing reasons, the Court will order Saadia Square to turn over its interest in SM Holdco.

## II. The Mechanism for Turnover

The only question remaining, then, is whether Saadia Square should turn over its interest in SM Holdco directly to Shumener, or whether the Court should order a sheriff's sale in the first

instance.[2]  As discussed, this decision is within the Court's discretion under CPLR Section 5240.

*See, e.g.*, *Sirotkin*, 35 N.Y.S.3d at 445.

In *79 Madison*, the New York Appellate Division upheld the state trial court's

direct-turnover order as a "provident[] exercise[]" of that court's discretion under Section 5240,

"given that the value of defendant's membership interest is uncertain and that defendant has

obstructed plaintiff's efforts to pursue the judgment."  166 N.Y.S.3d at 129; *see also 245 Park*

*Member*, 2024 WL 1506798, at *4 (recognizing *79 Madison* as "persuasive authority").  Two

courts in this District, applying *79 Madison*, have recently ordered direct turnover where both

these factors were met.  *See Telecom Bus. Sol.*, 2026 WL 161298, at *3 (ordering direct turnover

where private sale of intangible property would "likely generate a substantially higher return

than a sheriff's sale" and where judgment debtor had "record of obstruction over the past nearly

five years of litigation"); *245 Park Member*, 674 F. Supp. 3d at 42 (ordering direct turnover

"[g]iven the uncertain value of [the property] and the obstruction of [the judgment creditor]'s

efforts to pursue the [j]udgment").  On the other hand, the *79 Madison* court did not hold that

both factors must be met before a court can order direct turnover: It found that the presence of

both factors supported the trial court's exercise of its capacious discretion under Section 5240.

---

[2] The appointment of a receiver may also be, generally, an available mechanism in this context. *See Mishcon*, 2012 WL 5512240, at *3 ("Where property to be turned over is not subject to ready auction sale by the sheriff, New York law allows a court to appoint a receiver.").  But the CPLR requires the judgment creditor to move for that appointment.  *See* CPLR § 5228(a) ("*Upon motion* of a judgment creditor, . . . the court may appoint a receiver who may be authorized to administer, collect, improve, lease, repair or sell any real or personal property in which the judgment debtor has an interest or to do any other acts designed to satisfy the judgment." (emphasis added)).  Shumener has not so moved here, and therefore the possibility of receivership is not before the Court.  *See Mushtaq v. Cheema*, 220 N.Y.S.3d 418, 420 (N.Y. App. Div. 2024) (holding that trial court "erred in, sua sponte, appointing a temporary receiver pursuant to CPLR 6401" — which similarly permits such appointment "[u]pon motion of a person having apparent interest in property which is the subject of [the] action" — because "none of the parties moved for the appointment of a temporary receiver" (alterations in original) (quoting CPLR § 6401(a))).

Perhaps recognizing this, a third court in this District, and a New York state trial court, recently granted direct turnover of LLC membership interests without finding that the judgment debtor had obstructed collection. *See generally TBG Funding*, --- N.Y.S.3d ---, 2026 WL 504166; *Arrowhead*, 2025 WL 551357.

To the extent that *79 Madison* creates required factors for direct turnover, the first is met here. *See* Opp. at 6 (Saadia Square stating that its membership interest is "not precisely valued"). And while the Court is unpersuaded by most of Shumener's arguments as to the second factor, the Court nevertheless finds that direct turnover is appropriate here.

Regarding obstruction, Shumener alleges the following: (1) Jack Saadia (Saadia Square's "control person") was convicted of fraudulent importation and transportation of goods in 2009, Br. at 6-7; (2) Saadia Square is a "fraudulent enterprise" that Jack Saadia holds out as having "substantial assets," even though in fact it has none, *id.* at 7-8, 11; and (3) Jack Saadia made various misrepresentations about Saadia Square's finances, and Shumener relied on those misrepresentations in providing legal services to Saadia Square, the nonpayment for which led to the Judgment, *id.* at 9-12. Shumener provides no information regarding its efforts to collect on the Judgment itself, but it advises that the Judgment was registered in this District "on December 24, 2025," and that "[n]ot one dime has been paid towards" it since then. *Id.* at 12.

These arguments largely fail to address the relevant question of Saadia Square's obstruction. For example, Jack Saadia's 2009 conviction and Shumener's unsupported assertions about the legitimacy of Saadia Square's business have no bearing on whether Saadia Square has obstructed Shumener's efforts to collect on the Judgment. Nor does Shumener move the needle by recounting Saadia Square's underlying failure to pay its legal bills, *see id.* at 9-10, or by highlighting Jack Saadia's recalcitrance in attending his scheduled deposition during the litigation that arose from that failure, *id.* at 10-12, as these events likewise occurred before the

9

Judgment.  In sum, the Court does not credit Shumener's broad assertions of Saadia Square's and Jack Saadia's untrustworthiness as a proxy for Saadia Square's obstruction of Shumener's efforts to collect the Judgment.  *See, e.g.*, *id.* at 15 (alleging that Saadia Square and its vice president and control person Jack Saadia "have shown a penchant for engaging in fraudulent practices to evade debts").

Still, the Judgment has been validly registered in his District, and Saadia Square has not taken steps to satisfy it, for nearly six months; Shumener is entitled to collect on it now; and the facts of this case need not perfectly match those in *79 Madison* to enable this Court to exercise its discretion and order direct turnover under CPLR Section 5240.  *See TBG Funding,* --- N.Y.S.3d ---, 2026 WL 504166, at *2, *5 (granting direct turnover of LLC membership interest where "judgment debtors repeatedly failed to make any payments toward the judgment since December 2024" but had not otherwise obstructed collection); *see also Sirotkin*, 35 N.Y.S.3d at 445 (explaining that Section 5240 "grants the [trial court] broad discretionary power to alter the use of procedures set forth in CPLR article 52"); *245 Park Member*, 2024 WL 1506798, at *4 ("Section 5240 'grants the court substantial authority to order equitable relief.'" (quoting *Distressed Holdings, LLC v. Ehrler*, 976 N.Y.S.2d 517, 524 (N.Y. App. Div. 2013))).  Moreover, "[c]ourts have recognized that a sheriff's sale is a poor fit for intangible property" — like Saadia Square's membership interest in SM Holdco — "that lacks a ready market and could likely be sold at a private sale for a substantially higher price." *Telecom Bus. Sol.*, 2026 WL 161298, at *3.  Accordingly, the Court finds that direct turnover to Shumener is proper here.

## CONCLUSION

Therefore, Shumener's turnover motion is GRANTED.  Within one week of this Order, Saadia Square must turn over to Shumener the entirety of its membership interest in SM Holdco.

The Clerk of Court is respectfully directed to terminate the motion at Dkt. 2.

Dated: May 8, 2026
New York, New York

SO ORDERED.

_Jennifer Rochon_
JENNIFER L. ROCHON
United States District Judge

11